Florence ROBINSON, an
individual, Appellant,

v.

CITY OF BARTLESVILLE BOARD OF
EDUCATION, Appellee.

No. 62551.

Supreme Court of Oklahoma.

May 14, 1985.

Christopher W. Venters, Oklahoma City, for appellant.

Larry G. Taylor, Feldman, Hall, Franden, Woodard & Harris, Tulsa, for appellee.

SUMMERS, Justice.

After attending her granddaughter's graduation from Bartlesville High School, Mrs. Robinson fell between two parked cars in the school parking lot at about 10:30 P.M. on May 25, 1983. She sued the Board of Education, alleging that her broken ankle and other permanent injuries were sustained when she stepped upon a water drain grill which was sunken several inches below the asphalt surface. She claimed the drain was installed and maintained in such an improper manner as to create an unreasonable risk of injury. She further alleged the Board had a duty to provide some sort of warning (painting or lighting, e.g.) of its existence.

The Board demurred generally, and the trial court sustained the demurrer. Plaintiff elected to stand on her petition as sufficient, and the case was dismissed. Plaintiff appeals.

The Board defends the trial judge's ruling on two theories:

(1) The building and maintenance of parking lots is a discretionary function of the school district, and a political subdivision is not liable for its performance or

non-performance of discretionary acts, citing 51 O.S.1984 § 155(5).[1]

(2) The Board has no liability for failure to place signs or warning devices when such failure is the result of a discretionary act of the Board, citing 51 O.S.1984 § 155(15).[2]

The second contention of the Board may be disposed of first, because § 155(15) does not apply to the facts in this case. A full reading of subsection 15 reveals that it pertains to traffic control only. It deals with

"Absence, condition, location or malfunction of any traffic or road sign, signal or warning device...."

and then says:

"The signs, signals and warning devices referred to herein are those used in connection with hazards normally connected with the use of roadways and public ways...."

■ "Way" is defined as "A passage, path, road or street".[3] A school parking lot is not a public way, and we must limit our concern to whether subsection 5 insulates the School Board by reason of discretion.

■ We have previously held that allegations of failure to install and maintain traf-fic control devices, failure to provide patrol service, and failure to light the streets are allegations of failure to perform discretionary functions.[4] It is clear that if the installation and maintenance of the sunken drain in the school parking lot was a discretionary function of the School Board, then there can be no liability, and the demurrer was correctly sustained.

But there is a distinction to be drawn between acts of a municipal body that are discretionary and acts that are ministerial or operational.[5] In *Harrigan v. City of Reno*[6] the plaintiff was injured when she was blown by a gust of wind from a city parking lot with a drop-off of several feet with no guardrail. The City, with a comparable tort-claims act, argued that failure to install a guardrail was a matter of discretion, for which the City had immunity. The Court, however, held:

"In determining whether this is a proper case for departure from governmental immunity we must first ask what the act of the city was. The answer is, that it built a parking lot. The city need not have constructed the parking lot because that was an exercise of discretion based upon policy, that is, whether or not the municipality would provide a public parking facility adjacent to its city hall for

---

**1.** Section 155(5). "Performance or the failure to exercise or perform any act or service which is in the discretion of the political subdivision or its employees;"

**2.** Section 155(15). "Absence, condition, location or malfunction of any traffic or road sign, signal or warning device unless the absence, condition, location or malfunction is not corrected by the political subdivision responsible within a reasonable time after actual or constructive notice, or the removal or destruction of such signs, signals or warning devices by third parties, action of weather elements or as a result of traffic collision except on failure of the political subdivision to correct the same within a reasonable time after actual or constructive notice. Nothing herein shall give rise to liability arising from the failure of any political subdivision to initially place any of the above signs, signals or warning devices when such failure, alteration or change is the result of a discretionary act of the political subdivision. The signs, signals and warning devices referred to herein are those used in connection with hazards nor-mally connected with the use of roadways or public ways and do not apply to the duty to warn of special defects such as excavations or roadway obstructions;"

**3.** Black's Law Dictionary P. 1764.

**4.** *Ochoa v. Taylor*, 635 P.2d 604 (Okl.1981). See also *Kirk v. City of Muskogee*, 183 Okl. 536, 83 P.2d 594 (1938).

*Ochoa* holds that cities and school districts owe no common-law or statutory duty to install and maintain street lighting, traffic devices, control devices, and traffic control. The decision to do so or not to do so is a discretionary act, and a political subdivision is, therefore, exempt from liability under the Political Subdivision Tort Claims Act for failure to do so.

**5.** 18 McQuillen, Municipal Corporations § 53.-22a "Discretionary distinguished from ministerial duties."

**6.** 86 Nev. 678, 475 P.2d 94 (1970).

the convenience of the people. Its decision to do so was a policy, or discretionary, decision. Once having decided to construct a parking lot the city was obligated to use due care to make certain that the parking lot met the standard of reasonable safety for those who would use it. Such was the operational stage for which the statute does not exempt the city from liability if due care has not been used and an injury is caused." [7] "While whether or not to put in a parking lot is a policy decision, the rules of safety cannot be ignored by the government once the affirmative act of construction is undertaken. In this case, because the negligent conduct of omitting danger signs and guardrails was part of the operational phase, it is actionable." [8]

Cases from other jurisdictions consistently hold that it is discretionary with the municipality whether or not to order and construct the public improvement, and hence it will not be held liable for its act or failure to act.[9] The cases further hold that a municipality acts ministerially (or operationally) in constructing, maintaining and repairing public improvements, and hence may be liable for injuries caused by negligence.[10]

It has further been held that as an exception to the general rule of liability, discretionary immunity must be narrowly construed.[11]

In *U.S. v. Hunsucker* [12] the plaintiff claimed damage by reason of the construction of neighboring sewage facilities. The government raised discretion as a defense. The Ninth Circuit Court of Appeals allowed recovery, quoting with approval from *American Exchange Bank v. U.S.,*[13] where the plaintiff complained of failure to install a handrail on the steps of the post office building:

> "Undoubtedly there was an exercise of discretion in deciding whether and where a post office building should be located in Madison, Wisconsin, but whether a handrail should be installed as a safety measure on wide stone steps involves action at the operational level and would seem to involve no more discretion than fixing a sidewalk on post office grounds that might be in need of repair." [14]

In *Ingham v. Eastern Air Lines, Inc.*[15] plaintiff charged negligence in FAA procedures for incoming aircraft. The U.S. claimed its system was an exercise of discretion, and thus immune from tort claims. The Court said:

> This argument also lacks merit. When the government decided to establish and operate an air traffic control system, that policy decision was the exercise of discretion at the planning level, and could not serve as the basis of liability. (cite omitted) But once having made that decision, the government's employees were required thereafter to act in a reasonable manner. A failure to do so rendered the government liable for the omission or commission. (cites omitted) Thus, it has been decided that the government can be held liable for the negligence of its air traffic controllers. (Cites omitted)

---

7. Id. 475 P.2d at 95. Note: The terms "ministerial" and "operational" are used interchangeably in this opinion and in contrast to "discretionary".

8. Id. 475 P.2d at 96.

9. See *Snyder v. State Dept. of Health & Mental HYG.;* 40 Md.App. 364, 391 A.2d 863 (1978); *Hines v. City of Nevada,* 150 Iowa 620, 130 N.W. 181 (1911).

10. See *Tango v. City of New Haven,* 173 Conn. 203, 377 A.2d 284 (1977); *Lostumbo v. Board of Ed. of City of Norwalk,* 36 Conn.Sup. 293, 418 A.2d 949 (1980); *Baran v. City of Chicago*

*Heights,* 43 Ill.2d 177, 251 N.E.2d 227 (1969); *Mayor & C. of Savannah v. Palmerio,* 242 Ga. 419, 249 S.E.2d 224 (1978); *City and County of Denver,* 95 Colo. 165, 33 P.2d 1071 (1934).

11. *Larson v. Independent School Dist. No. 314,* 289 N.W.2d 112, (Minn.1979), 18 McQuillen, supra Note 5 at 245.

12. 314 F.2d 98 (9th Cir.1962).

13. 257 F.2d 938 (7th Cir.1958).

14. Id. at 941.

15. 373 F.2d 227 (1967 2nd Cir.).

'[D]iscretion was exercised when it was decided to operate the tower, but the tower personnel had no discretion to operate it negligently.'[16]

■ Action by a municipality is discretionary when it is the result of judgment. The municipality has a discretion to do or not to do a public work or improvement; the duty is, therefore, discretionary up to the time that it is determined to do the work or improvement. After the work is ordered and involves merely the execution of a set task, nothing remains for discretion. The duty of the municipality is then ministerial, that is to say operational, and requires the municipality to do the work with reasonable care and in a non-negligent manner.

■ Where discretion ends and actionable negligence begins cannot be defined without reference to the factual situation in which the question of discretionary v. ministerial has arisen.[17]

■ In this case we hold that the construction and maintenance of the high school parking lot in Bartlesville with its allegedly sunken drain grill were operational or ministerial acts of the School Board rather than discretionary ones. Thus, there is no immunity under 51 O.S.1984 § 155(5). The order of trial court is reversed. Mrs. Robinson's petition is re-instated and the cause remanded with directions to proceed.

REVERSED. REMANDED FOR FURTHER PROCEEDINGS.

All Justices concur.

16. Id. at 238.

17. McQuillin, supra note 5; *Hunsucker*, supra, note 12 at 102–103; *Johnston v. Chicago*, 258 Ill. 494, 101 N.E. 960 (1913).